**FANTHAM et al. v. GOODRICH et al.**

No. 12250.

Court of Civil Appeals of Texas. Galveston.

March 29, 1951.

Rehearing Denied April 19, 1951.

Butler, Binion, Rice & Cook, Houston, (W. B. Johnson, Jr., and William C. Perry, Jr., Houston, of counsel), for appellant.

Carl & Lee, and Bell, Dyche & Bell, Houston (Ralph Lee and Spurgeon E. Bell, Houston, of counsel), for appellees Miller and Goodrich.

Hirsch & Westheimer, Edgar O. Bottler and Bennett Lay, Houston, for appellee Battelstein.

Frank L. Heard, Jr., Houston (Rex G. Baker and Nelson Jones, Houston, of counsel), for appellee Humble Oil & Refining Co.

CODY, Justice.

Appellants instituted this proceeding below primarily as a formal action in trespass to try title against appellees to an undivided 9/640ths of the oil, gas and other minerals in a tract of 96 acres, more or less, in Harris County, fully described in appellants' petition, said mineral interest being subject to an oil, gas and mineral lease belonging to and being operated by appellee Humble Oil and Refining Company. In the alternative the proceeding was against appellees for an accounting and recovery of the value of the oil belonging to appellants which the evidence showed had been removed by appellees, etc. It is admitted that the right of the parties in and to the mineral interest here put in issue by appellants is to be determined by the proper construction of two certain mineral deeds executed by appellant M. C. Fantham to appellee R. H. Goodrich under date of August 13, 1935; the other deed having been executed by said appellant to appellee P. Battelstein under date of August 15, 1935. In view of the fact that the rights of the parties are admittedly dependant upon the proper construction to be placed upon said two deeds, for the purposes of this opinion R. H. Goodrich will be treated as the present owner of such interest as was granted to him by the deed of August 13, 1935, and appellee Battelstein will be treated as the present owner of such interest as was granted to him by the deed dated August 15, 1935, and appellant Fantham will be treated as the owner of such mineral interest in and to the aforesaid 96 acres, more or less, if any, as remained in him after his execution and delivery of aforesaid mineral deeds dated respectively August 13 and August 15, 1935.

It is further undisputed that, shortly before appellant Fantham executed the aforesaid deeds, he had been vested with such interest in the minerals tract in question by two certain deeds from certain parties by the name of Beck; and it is undisputed that he did not know the exact extent of the undivided mineral interest which had become invested in him by the said deeds from the Becks, which did not specify the extent of the undivided interest there-

by conveyed to said Fantham; but the said Fantham believed that he had become invested by said two mineral deeds with something more than five royalty acres and something less than ten royalty acres in the aforesaid tract of 96 acres, more or less.

The deed from Fantham to Goodrich dated August 13, 1935, after incorporating by reference the two mineral deeds from the Becks to Fantham, reads in part as follows: "Now, therefore, Know All Men by These Presents: That I, M. C. Fantham, * * *, for and in consideration of Ten Dollars and other valuable considerations cash to me in hand paid, * * *, have granted, bargained sold and conveyed and by these presents do grant, bargain, sell and convey unto the said R. H. Goodrich one half ($\frac{1}{2}$) of all right, title, equity and interest of every kind and character acquired by me by virtue of the hereinabove described deeds covering the hereinabove described land. (For the purpose of calculation and insofar as the warranty of grantor herein applies, it is estimated that the interest hereby conveyed is equal to 9/224ths undivided interest in and to all the oil, gas and other minerals, on, in or under, or that may be produced from the hereinabove described land; same being equal to a full 3.857 royalty acre mineral interest, more or less)."

(The deed also contained the habendum and general warranty clauses.)

The other mineral deed here to be interpreted, dated August 15, 1935, after making reference to the two conveyances to appellant Fantham from the Becks, reads, so far as here material, as follows: "Now, therefore, Know All Men by These Presents: That I, M. C. Fantham * * * have granted, bargained, sold, assigned and conveyed, and by these presents do grant, bargain, sell, assign and convey to the said Battelstein an undivided one-half of all my remaining right, title, equity and interest in and to the mineral rights acquired by me by virtue of the hereinabove described mineral deeds. For purposes of more clearly indicating the interest herein conveyed, the following is stated: Previously I have conveyed to R. H. Goodrich

an undivided 9/224ths of my interest in and to said minerals, retaining an undivided 9/224ths interests in and to said minerals, estimated at 3.57 royalty acres, more or less. By this instrument it is my intention to convey an undivided one half of my remaining mineral interest, estimated at being a full 1.928 royalty acres, more or less, and the warranty herein given is based on and limited to same."

(Said deed also contains the habendum and general warranty clauses.)

The case below was tried to the Court without a jury upon stipulations of counsel, documentary evidence, the testimony of appellant Fantham, of appellee Goodrich, and of one McGee, who was an official of appellee Humble Oil and Refining Company. The testimony of said official related to such matters as when the first producing well was drilled upon the tract of 96 acres, more or less; the number of producing wells thereon; the amount of production; the form of division orders used, etc., concerning which there was no dispute, and which are not here relevant.

At the conclusion of the evidence, the Court rendered judgment that appellants take nothing. Thereafter, in response to appellants' request, the Court filed conclusions of fact and law, as follows:

"I find, based upon the language used in said deed, that the deed dated August 13, 1935, from the plaintiff M. C. Fantham, as grantor, to the defendant, R. H. Goodrich, as grantee, introduced in evidence herein as plaintiffs' Exhibit No. 7, conveyed to R. H. Goodrich, as grantee, an undivided 9/224ths mineral interest in the tract of land described in said deed and in Plaintiffs' Petition.

"II.

"I find, based upon the language used in said deed, that the deed dated August 15, 1935, from the plaintiff M. C. Fantham as grantor, to the defendant P. Battelstein, as grantee, introduced in evidence herein as plaintiffs' Exhibit No. 8, conveyed to P. Battelstein as grantee, an undivided 9/448ths mineral interest in the tract of land described in said deed and in Plaintiffs' Petition.

"Conclusions of Law

"Based upon the above findings, I conclude that plaintiffs should take nothing by their suit."

Appellants predicate their appeal upon three points. The first point complains of the Trial Court's finding that the mineral deed to R. H. Goodrich conveyed an undivided 9/224ths mineral interest in the land in question; point two complains of the Trial Court's finding that the deed to Battelstein conveyed an undivided 9/448ths mineral interest in the land here involved, and the third point complains that the Court did not award appellants the 9/640ths of the minerals sued for subject to the Humble lease.

It was stipulated by counsel that Fantham owned an undivided 9/160ths of the minerals in the tract of 96 acres, more or less, by virtue of the deeds from the Becks, at the time he executed the deed to Goodrich. And appellants contend that the deed from Fantham to Goodrich conveyed half of that interest, or 9/320ths of the minerals. In order to eliminate the provisions set out in the parentheses, which is set out in the deed, as copied above, appellants invoke the following rule: "Wherever the first part of a deed is definite and certain and irreconcilable with later parts, the first part must prevail." Benskin v. Barksdale, Tex.Com.App., 246 S.W. 360, 363; and see Wallace v. Crow, Tex.Sup., 1 S.W. 372; Witt v. Harlan 66 Tex. 660, 2 S.W. 41.

 While Texas cases may be found using such language as is quoted above, we believe upon examination no Texas case will be found which has held that the mere form in which the parties have expressed their intentions in a deed will be allowed to prevail over their true intentions, as expressed in the deed as a whole. The true rule is " * * * if there is an irreconcilable conflict between different parts [of the deed], that must prevail which will carry out the intention of the parties as expressed in the instrument." Blount v. Bleker, 13 Tex.Civ.App. 227, 35 S.W. 863, 864 (writ refused). It is now well settled that all parts of the instruments will be given effect when possible, and the in-

tention of the parties will be granted from the whole without reference to matters of mere form, relative position of description, and technicalities or arbitrary rules. Sun Oil Co. v. Burns, 125 Tex. 549, 552, 84 S.W.2d 442.

■ In all cases where deeds are susceptive of different constructions, it is the duty of the court in construing them to take into consideration the particular situation of the parties, and the state of the thing granted for the purpose of ascertaining the true intent; " 'for the intention of the parties is manifestly paramount to the manner chosen to effect it. The courts, therefore, may avail themselves of the same light which the parties enjoyed when the contract was executed, and may place themselves in the same situation as the parties who made it, in order that they may view the circumstances as those parties viewed them, and so judge the meaning of the words and the correct application of the language and the things described; and if any of the terms used seem to contradict the manifest intention, as clearly indicated by the agreement as a whole, the intention must govern.' " Stevens v. Galveston, H. & S. A. Ry. Co., Tex.Com.App., 212 S.W. 639, 642, quoted from Lockwood v. Ohio R. Ry. Co., 4 Cir., 103 F. 243, 43 C.C.A. 202.

Here the court admitted evidence of the situation of the parties at the time the deed was drawn, executed and delivered. From the evidence the court could conclude that Fantham did not know the extent of the undivided mineral interest he owned in the tract in question, but that he believed that he owned between five and ten royalty acres. Further, that Goodrich was paying for the interest he acquired on the basis of royalty acreage that he was to get. Further, that Goodrich was unwilling to buy unless Fantham guaranteed to him that he was getting the amount of royalty acreage which he was paying for; and further, that it was upon the basis that the royalty acre specified was guaranteed that the transaction took place. In the light of the evidence of the situation of the parties at the time of the transaction before the court, the intention of the par-

ties *as expressed in the deed* became clear. And the court in our opinion correctly based his finding with respect to the interest conveyed by the Fantham-Goodrich deed "upon the language used in said deed."

■ The following language from Blount v. Bleker, supra, is applicable to the guaranty contained in the parenthesis set out in the Fantham-Goodrich deed, "It was put there for a purpose, and is a very important part of the deed. It may be easily conceived that a party might be unwilling to accept a deed purporting to convey only the interest of the grantor, and that his objection would be removed by the insertion of words defining the interest." Here it is evident that the trial court construed the warranty contained in the parenthesis, as a warranty of the quantum of the interest conveyed, and correctly so. A warranty as to the quantity of land or interest in land conveyed will be given the same effect with reference to working an estoppel as a warranty of title with respect to title. In Duhig v. Peavy-Moore Lumber Co., Inc., 135 Tex. 503, 508, 144 S.W.2d 878, 880, the Court said: " 'When one assumes, by his deed, to convey a title, and by any form of assurance obligates himself to protect the grantee in the enjoyment of that which the deed purports to give him, he will not be suffered afterwards to acquire or assert a title, and turn his grantee over to a suit upon his covenants for redress. The short and effectual method of redress is to deny him the liberty of setting up his after-acquired title as against his previous conveyance. This is merely refusing him the countenance and assistance of the courts in breaking the assurance which his covenants had given.' * * * What the rule above quoted prohibits is the assertion of title in contradiction or breach of the warranty. If such enforcement of the warranty is a fair and effectual remedy in case of after-acquired title, it is, we believe, equally fair and effectual and also appropriate here."

At the time Fantham was paid for an undivided 9/224ths of the minerals in the tract of 96 acres, more or less, being 3.857 royalty acres, and warranted such quantity to Goodrich, he owned a greater quan

tity. He is now estopped to assert that he did not convey the quantity which he warranted.

What has been said with reference to the mineral deed from Fantham to Goodrich applies with equal force to the deed from Fantham to Battelstein with this exception,—at the time ·Fantham executed said deed he lacked 9/2240ths of owning the quantity of minerals which he thereby warranted to Battelstein that he owned.

The judgment is affirmed.