**Edlo A. COOK et al., Appellants,**

v.

**Mrs. Helen COOK, Appellee.**

No. 3673.

Court of Civil Appeals of Texas.

Waco.

Dec. 31, 1959.

Rehearing Denied Jan. 21, 1960.

W. Ernest West, Canton, Houston B. Harrison, Paris, James R. Lewis, W. F. Weeks, Tyler, for appellants.

Sanders & Stanford, Canton, Wynne & Wynne, Wills Point, for appellee.

WILSON, Justice.

The children of decedents, W. H. Cook and his first wife, Twillie, appeal from the judgment partitioning and settling property interests in an action instituted by them against Helen Cook, second wife of their father. This is a non-jury case in which findings and conclusions were filed.

W. H. and Twillie Cook were married in 1905. Appellants are their eight children. Twillie Cook died intestate in 1940 and the surviving husband qualified and continued to act as community administrator until his death, intestate, July 19, 1957. W. H. Cook married appellee, Helen Cook, June 14, 1941. It is undisputed that all realty involved, including mineral interests, was acquired as community property during the first marriage.

 Appellants' first point complains the court erred in granting appellee an entire homestead right in the homestead of the first community because she was entitled to such only in W. H. Cook's one-half interest jointly with appellants. The judgment, after describing the land in question, correctly declares that appellants are owners of an undivided one-half interest there-

in; and that the other one-half is owned by W. H. Cook's estate as his separate property, subject to the rights of appellee to a life estate in his interest, "together with her right of homestead therein so long as she chooses to use the same as such." The property was occupied as the homestead of W. H. and Helen Cook until his death. The judgment is not subject to the construction complained of. Appellee admits her homestead right is not exclusive and is limited as appellants contend.

■ Error is assigned to the determination that certain building and loan certificates and other personalty are a part of the community estate of the second marriage. It is asserted that the entire income during this marriage, (except some building rentals in fixed amount) was oil royalty income of the first community or of W. H. Cook's separate estate; and therefore any personalty purchased therefrom belongs to these estates.

In 1943 Cook opened an account in a Grand Saline bank with a $2,057.55 deposit. During the next fourteen years of the second marriage until his death, there were hundreds of unidentified deposits and withdrawals. Dividends, interest, loan repayments and other income from Cook's separate estate were deposited in this account. The evidence shows that Cook engaged in commercial enterprises during the second marriage, and, although there is no affirmative showing that royalty income was deposited in the account, apparently all income, separate and community, was indiscriminately intermingled. Appellants offered evidence of totals or estimates of royalty income of the first community, but there is nothing in the record to segregrate or determine the source of the deposits in the account.

■ The presumption concerning the separate property status of bank accounts fixed by Art. 4622, Vernon's Ann.Tex.Civ. Stats., is inapplicable since the action is between a spouse and successors of a spouse. The commingled funds, out of which the personalty was acquired, became community property as determined by the trial court. Hodge v. Ellis, 154 Tex. 341, 277 S.W.2d 900, 907. The presumption of Art. 4619, Sec. 1: "all the effects which the husband and wife possess at the time the marriage may be dissolved shall be regarded as common effects or gains, unless the contrary be satisfactorily proved," governs. The burden of rebutting this presumption rests on appellants. Wilson v. Wilson, 145 Tex. 607, 201 S.W.2d 226; Odell v. Odell, Tex.Civ.App., 306 S.W.2d 914, 918, writ ref. n. r. e. The only evidence to meet this burden is the showing that income from oil runs did exist in a large amount. The points relating to this contention are based on an insupportable factual premise. Callaway v. Clark, Tex. Civ.App., 200 S.W.2d 447, writ ref.; Davis v. Sturdivant, Tex.Civ.App., 306 S.W.2d 386.

■ Appellants say that since $60,000 in building and loan certificates purchased by Cook from funds in the Grand Saline bank account after the second marriage were issued in the name of "W. H. Cook, trustee" for each of his children, it was erroneously determined that they belonged to the second community estate.

The unchallenged finding of the trial court is that after the death of his first wife, W. H. Cook, who was community administrator, transferred to plaintiffs as they became of age their interests in various leases and bank accounts. Each child signed division orders and accepted transfer of the funds before 1951. After Cook purchased the building and loan certificates, all dividends therefrom were paid to him and deposited in his Grand Saline bank account. There is evidence to indicate the certificates were issued to him as trustee in order that F. D. I. C. insurance on maximum amounts of $10,000 would be effective. Cook placed these certificates in his safety deposit box from which appellants removed them after his death. It is not shown they were previously aware they existed.

Appellants' apparent position is that because of the form in which the certificates were issued, they were held in trust by Cook for them and he intended to fix equitable title in them as beneficiaries. It is not contended that elements of a gift exist. The only circumstance supporting the trust theory is the issuance of the certificate to Cook as trustee. This is insufficient under this record. Fleck v. Baldwin, 141 Tex. 340, 345, 172 S.W.2d 975, 978. We cannot say the trial court's determination is erroneous.

■ Appellants urge that the open mine doctrine was erroneously applied by the trial court. A life estate in ⅓ of the separate estate of W. H. Cook as to various tracts was adjudged to be vested in appellee; and the judgment provides that she is entitled to receive her proportionate interest in the income, royalties and rents therefrom, with accumulations and suspensions of oil and gas production since Cook's death, during her life. The vesting of the life estate at Cook's death, and long continued production prior thereto under leases executed by Cook and his first wife, are conceded. The production is from lands as to which appellee has no homestead rights. Appellants' reasoning is that (1) absence of homestead rights, (2) absence of a lease executed by appellee and (3) absence of a will by which the life estate was created, preclude application of the open mine doctrine; and therefore appellee is entitled only to interest on royalty, and not to royalty income.

There is no Texas authority with which we are familiar from which it could be deduced that the open well rule is restricted to life estates in which the life tenant has homestead rights. Conversely, it was insisted by the minority that the asserted extension of the doctrine to constructive openings should be limited to other types of life estate in Youngman v. Shular, 155 Tex. 437, 288 S.W.2d 495. Cases cited by appellants in which homestead was involved merely demonstrate that the survivor's homestead right is in the nature of a life

estate created by law. e. g. Thompson v. Thompson, 149 Tex. 632, 236 S.W.2d 779, 786; Petrus v. Cage Bros., Tex.Civ.App., 128 S.W.2d 537, 538, writ ref. The basic practical distinction between legal life estates attaching to the survivor's homestead rights and those created by the statutes of descent and distribution, as here, is that only the latter can be affected by will. Woodward, Open Mine Doctrine, 35 Tex. L.Rev. 538, 544.

■ Neither is it necessary that the life tenant shall have been a party to the instrument under which the well or mine was opened. The rights are an incident of the homestead status and do not rest in contract. No significance is perceived in the fact that the life estate is not created by testamentary instrument. In Texas there is no distinction between conventional and legal life estates in determining whether the open mine doctrine is applicable. Youngman v. Shular, supra; Davis v. Bond, 138 Tex. 206, 158 S.W.2d 297; Swayne v. Lone Acre Oil Co., 98 Tex. 597, 86 S.W. 740, 69 L.R.A. 986; Guittard, Rights of Life Tenants, 4 T.B.J. 265. These, and appellants' other points, are overruled.

■ Appellee, by cross-assignment, complains of a portion of the judgment by which the trial court decreed appellants have a valid claim against Cook's separate estate for $22,736.60 which should be recognized or offset by the representative of his estate in the course of administration. Apparently, this item in the judgment is based on a general allegation that W. H. Cook, as community administrator after the death of his first wife, failed to account to appellants for certain bank balances and royalty income. Appellee pleaded limitation to claims for accounting as to the first community. The judgment declares the plea is not well taken and is not available.

The cross-point is overruled. As community administrator Cook is not shown to have repudiated his duties or responsibil-

ities to appellants, nor to have done any act which would constitute notice he was claiming adversely so as to make limitation begin to run against this claim as was the case in Kruse v. Sanders, Tex.Civ.App., 231 S.W.2d 747, no writ; Wingo v. Rudder, 103 Tex. 150, 124 S.W. 899, and Miller v. Miller, Tex.Civ.App., 78 S.W. 1085, writ ref.

The judgment of the trial court is affirmed.